**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |
|---|---|
| WANNA PLAY PRODUCTS INC. DBA AMAZON STOREFRONT CALMEROOS | ) ) ) ) |
| Plaintiff, | ) Civil Action No. 1:20-cv- ) |
| v. | ) JURY TRIAL DEMANDED ) |
| ROBERT EMERY, SNUGGLE PET PRODUCTS, LLC DBA SmartPetLove, and DOE 1 | ) ) ) |
| Defendants. | ) ) |

**COMPLAINT**

Plaintiff Wanna Play Products Inc. doing business as Amazon Storefront Calmeroos ('Plaintiff' or 'Calmeroos'), and for its Complaint against Defendants Robert Emery ('Defendant Emery'), Snuggle Pet Products, LLC doing business as SmartPetLove ('SmartPetLove'), and DOE 1 ('Defendant DOE 1')(collectively, 'Defendants') alleges as follows:

**I.   NATURE OF THE ACTION**

1. Plaintiff seeks judicial assistance because Defendants have 1) eliminated Plaintiff's highest grossing product through fraudulent complaints; 2) trashed

1

Plaintiff's listing and seller reviews with untrue statements, and 3) ignored Plaintiff's resolution efforts.  Defendants' latest malicious tactics evidences their calculated willingness to hurt and eliminate honest competitors, such as Plaintiff Calmeroos.

2. Defendants compete directly with Calmeroos by selling puppy-comforting products on Amazon.com.

### A. Without Ownership Rights, Defendants Asserted Unenforceable Patents in Their Infringement Claims Against Plaintiff.

3. Concerning the first issue, Defendants fired off multiple fraudulent Amazon Patent Infringement Reports ('Amazon Complaints') claiming that Calmeroos infringes unenforceable, expired, and irrelevant US patents that they do not own.

4. Worse, thereafter, Defendants' bald patent assertions omitted key information, rendering Calmeroos helpless.

5. Fully knowing the effects of their disruption, Defendants are content in locking their competition in e-commerce limbo.

### B. Defendants Filed Anticompetitive and Unwarranted Negative Reviews Against Plaintiff.

6. Turning to the second issue, upon information and belief, Defendants have filed unfair one-star reviews on Amazon causing would be customers to reject

Calmeroos' offerings.  Defendants attacked both Calmeroos as an Amazon seller and its accused puppy.

### C. Defendants Received a Permanent Injunction Preventing Calmeroos' Sales by Submitting False Claims of Patent Infringement, Entering an Inappropriate Negative Review, and Filing False Inauthentic Claims .

7. Finally, despite Calmeroos' and its counsel's pre-suit resolution efforts, which evidences Defendants' meddling, they and their patent litigation counsel refuse to withdraw the fraudulent complaints or anticompetitive reviews.  As explained more fully below, Defendants fire and forget complaint tactics have devastated Plaintiff Calmeroos and inflicted irreparable damages.

8. This is a cause of action to remedy Defendants' anti-competitive, tortious, and fraudulent behavior against Calmeroos on the Amazon.com selling platform.

9. Defendants' actions have resulted in Plaintiff's suspended listings, lost sales, potential account cancelations, frozen funds, and stranded assets on Amazon.com.

### D. Defendants Forced Calmeroos to Seek Judicial Intervention.

10. Because of Defendants' abovementioned atrocities, Plaintiff's causes of action include declaratory relief that it does not infringe Defendants' invalid and unenforceable asserted patents.  Additionally, Defendants abhorrent behavior results in liability for violations of tortious interference with contractual

3

and business relations; defamation; Georgia Deceptive Trade Practices Act; and unjust enrichment.

11.      By filing Amazon Complaints and ignoring any resolution efforts, Defendants successfully shuttered an entire business without presenting any evidence, providing any details (such as a relevant patent number Calmeroos' allegedly infringed), or expending more than five minutes to do so.

12.      Despite incrementally escalating Calmeroos' resolution efforts, Defendants' many failures have forced Calmeroos to turn to judicial intervention.

## II.   JURISDICTION AND VENUE

13.      Calmeroos' patent invalidity and non-infringement claims for arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1338(a), 1367, and 2201.

14.      Further, this Court may exercise personal jurisdiction over Defendants because they have transacted and continue to transact business in this judicial district and division.

15.      Further still, this Court has personal jurisdiction over Defendants

because they have knowingly and actively engaged in tortious acts in this District.

16.     This Court has supplemental jurisdiction over Plaintiff's Georgia state-law claims pursuant to 28 U.S.C. § 1367, in that the state law claims are integrally-related to the federal claims and arise from a common nucleus of operative facts, such that the resolution of all claims herein is in the interests of judicial economy.

17.     The Court has personal jurisdiction over Defendants pursuant to Georgia's Long Arm Statute because Defendants have committed tortious acts within the state from which the below causes of action arise, and/or have committed tortious actions outside of Georgia with the intent to cause—and in fact caused—injury in Georgia and to Georgia, as explained in more detail below.

18.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391, 28 U.S.C. § 1400(b).

## III.    PARTIES

### A. Plaintiff Wanna Play Products Inc.

19.     Plaintiff Wanna Play Products Inc. is a Canadian corporation located at 12 McKall Bay, Winnipeg, Manitoba R3X 1T8.  Plaintiff does business as Amazon Seller Calmeroos.  Ms. Crystal McPherson owns and operates Wanna

Play Products Inc. with her husband.

### B. Defendant Robert Emery

20.     Upon information and belief, Robert Emery is the member-manager of Snuggle Pet Products LLC.  Upon further information and belief, he resides at 796 Marbury Lane, Longboat Key, Florida 34228.

### C. Defendant Snuggle Pet Products LLC

21.     Upon information and belief, Snuggle Pet Products LLC has a principal place of business at 41180 Vincenti Court, Novi, Michigan 48375. Defendant Emery serves as its registered agent.  Upon further information and belief, Snuggle Pet Products LLC operates an Amazon.com account named SmartPetLove.

### D. Defendant DOE 1

22.     Upon information and belief, Defendant DOE 1, identified as 'Real Puppy Lover,' submitted false Amazon product and seller reviews.  Upon further information and belief, Defendant DOE 1 is either Defendant Emery, his family member, or his friend.

23.     Upon information and belief, Defendant DOE 1 is either the same Defendant, person, entity, or are working in concert with each other.

24.     Upon information and belief, Defendant DOE 1 is a person or

business entity of unknown makeup or anonymous individual(s) who conduct business throughout the world, including within this judicial district through the operation of Amazon.com storefront(s), Amazon Reviews, Amazon.com buyer account(s), or e-mail address(es).

25.    Upon information and belief, Defendant DOE 1 purchased goods with the intent to cause harm and damage Plaintiff. Upon further information and belief, Defendant DOE 1 uses anonymous information masking its true identity, physical address, and other contact information. Upon further information and belief, Defendant DOE 1 operates in this fashion to protect its true identity.

26.    Plaintiff is presently unaware of the true identity of Defendant DOE 1. Once Plaintiff identifies the entity or individual behind Defendant DOE 1, Plaintiff will amend this Complaint.

## IV.    AMAZON.COM, INC.[1]

27.    Amazon.com, Inc. ('Amazon') is the world's largest online retailer. The Amazon.com platform offers products worldwide. Amazon is available solely online at https://www.amazon.com/ (last visited Dec. 8, 2019).

---

[1] Amazon.com Inc. is the corporation that owns and operates Amazon.com, which is often abbreviated to Amazon.

28.     'Amazon provides a platform for third-party sellers ('Sellers') and buyers ('Buyers') to negotiate and complete transactions. Amazon is not involved in the actual transaction between Sellers and Buyers . . . .'[2]

29.     Sellers ship goods to various Amazon warehouses across the United States.  At those warehouses, Amazon stores a seller's inventory and ships goods out of those warehouses.  Only about half of the states have Amazon warehouses.  Georgia is one of those states.[3]

30.     To make a purchase, typically, a Buyer searches for a particular item on Amazon.com or via a mobile application and submits an order.

31.     Amazon identifies that particular item at one of its many warehouses.  Amazon then fulfills that order by mailing the items to the Buyer.

### A. Selling on Amazon.com Successfully

32.     Amazon allows Sellers to offer for sale and sell products on the Amazon.com platform.  Amazon requires that Sellers enter into agreements with it concerning the relationship between it and Sellers, duties and responsibilities

---

[2] https://www.sec.gov/Archives/edgar/data/1280998/000104746904006416/a2128948zex-10_19.htm (last visited Dec. 8, 2019).

[3] https://trustfile.avalara.com/resources/amazon-warehouse-locations/atl6/  (last visited Dec. 8, 2019).

of the Sellers, and other policies.[4]

33.      Amazon allows Sellers to sell identical items under the same

Amazon Standard Identification Number ('ASIN').[5] The only factor that

separates sellers of products on the same ASIN is the seller's goodwill.  Since

goodwill is the life blood of any Amazon seller, the seller's success or demise can

---

[4] *See, e.g.*, Amazon.com's Participation Agreement *available at* https://www.amazon.com/gp/help/customer/display.html/ref=hp_rel_topic?ie=UTF8&nodeId=1161272 (last visited Dec. 8, 2019); *see also* Amazon.com's Restricted Products *available at* https://www.amazon.com/gp/help/customer/display.html?nodeId=200277040 (last visited Dec. 8, 2019).

[5] Amazon Standard Identification Numbers (ASINs) are unique

> blocks of 10 letters and/or numbers that identify items.  You can find the ASIN on the item's product information page at Amazon.com.  For books, the ASIN is the same as the ISBN number, but for all other products a new ASIN is created when the item is uploaded to our catalogue.  You will find an item's ASIN on the product detail page alongside further details relating to the item, which may include information such as size, number of pages (if it's a book) or number of discs (if it's a CD).

> ASINs can be used to search for items in our catalogue.  If you know the ASIN or ISBN of the item you are looking for, simply type it into the search box (which can be found near the top of most pages), hit the 'Go' button and, if the item is listed in our catalogue, it will appear in your search results.

http://www.amazon.com/gp/seller/asin-upc-isbn-info.html  (last visited Dec. 8, 2019).

be made or broken by reviews from Amazon purchasers.

34.     Negative reviews damage a seller's brand name and kill sales because purchasing decisions are largely made after reading reviews left by others.  Such reviews frequently attack both products and their sellers. Declaration of Crystal McPherson ('McPherson Decl.') Decl. ¶ 3, Exhibit 1.

35.     Amazon.com Inc. takes intellectual property infringement cases seriously.  As such, it automatically suspends a seller's offering if a complaint is filed.  Amazon does not review all its automatic suspensions, nor does it intervene in alleged disputes between a seller and a complainant.

36.     Rather, an accused seller must resolve any apparent issue with the complainant.  However, complainants often fail to respond to good faith efforts to resolve issues.  Or, complainants often ignore evidence and arguments that prove their complaint lacks merit.  In either situation, an accused seller is left in limbo.  Hence, accused sellers are left with two options – 1) remain suspended, or 2) seek judicial intervention.

37.     In some cases, Amazon not only suspends an accused offering, it also suspends an accused seller's entire account regardless of whether the intellectual property complaint applies to the other offerings.

38.     When compared to a brick and mortar store, such as Wal-Mart, the

devastating effects of a wrongful intellectual property complaint can be seen.

39.     If an Amazon complainant submits a single-paged intellectual property infringement report, the result is akin to Wal-Mart removing a certain product from all of its shelves.

40.     Often, Amazon may suspend all an accused seller's offerings.  This is akin to Samsung having an intellectual property complaint against one television model, then Wal-Mart removes all of Samsung's televisions, stereos, speakers, computers, monitors, printers, cameras, washers, dryers, refrigerators, ovens, dishwashers, microwaves, vacuums, cell phones, tablets, virtual reality devices, wearable smart devices, smart home devices, portable music players, and headphones.

41.     For Samsung, the suspension would only apply at Wal-Mart. However, for many Amazon sellers, the Amazon.com platform is the only avenue they sell through.

### B.  Filing an Infringement Complaint with Amazon

42.     Amazon's automated IP infringement complaint process is both streamlined and straightforward.[6]  To file one, a purported rights owner

---

[6] https://www.amazon.com/gp/help/reports/infringement  (last visited Dec. 22, 2019).

populates an online form to suspend a seller's product listing.

43.    The following information is the only information a complainant

must submit to suspend a seller's listing, and possibly, its account:



44.    At the end of the form, a complainant must declare:

45.    'I have a good faith belief that the content(s) described above

violate(s) my rights described above or those held by the rights owner, and that

the use of such content(s) is contrary to law.'  *Id.*

---

[7] https://www.amazon.com/report/infringement **(last visited Dec. 31, 2019).**

46.     'I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above.' *Id.*

47.     To resume selling after a complaint, Amazon.com requires the rights owner to affirmatively withdraw it through a retraction request.  McPherson Decl. ¶ 4, Exhibit 1.

48.     Should a rights owner refuse to withdraw a complaint, the Amazon.com seller's ASIN is suspended so a seller cannot sell goods associated with that ASIN.  Further, multiple complaints may lead to account suspension. McPherson Decl. ¶ 5, Exhibit 1.

49.     An account suspension is where Amazon locks a seller's account so that it cannot sell *any* item, even those unrelated to the ASIN complained of. McPherson Decl. ¶ 6, Exhibit 1.

### C.  Amazon Inauthentic Complaints

50.     Experts vary in describing Amazon Inauthentic Complaints. However, many agree that such complaints stem from a competitor's malfeasance.

51.     Sellers are often confused by an Amazon Inauthentic policy violation because they are confident that they are selling genuine goods.  However, Amazon sees them as inauthentic because of WHERE the seller bought their goods.  They are either selling

gray market goods retail arbitrage, or liquidation goods.[8]

52.     Inauthentic is a term loosely defined by Amazon that often confuses sellers who receive this type of complaint.  According to seller policies, inauthentic items are not quite counterfeit. In the eyes of Amazon, inauthentic items are not completely fake, but they are part of a gray market category that can get quite complicated. This gray market can be hit or miss – regardless, when Amazon chooses to flag your item as potentially inauthentic, it means that the product has allegedly been purchased from a source that is not authorized to sell it.[9]

53.     **[I]nauthentic complaints are also often created as a means to eliminate competition on the Amazon platform, when made by other sellers.** Although these complaints are baseless for the most part, this is not always the case. Therefore, each must be taken seriously and acted on immediately. Reaching out to the complainant personally (or via an attorney) is always the best way to approach an inauthentic product complaint and it is typically what Amazon instructs sellers to do.[10]

54.     Lots of sellers receive policy warnings due to inauthentic complaints. The particular wording of inauthentic item complaints or counterfeit items then triggers manual investigations. Those reliably lead to a suspension of your Amazon seller account if investigators identify any item quality patterns or systemic problems. Seller Performance teams suspend both individual listings and entire accounts on a daily, if not hourly, basis.  If Amazon investigators see no annotations on the account that reflect action on

---

[8] https://egrowthpartners.com/why-do-so-many-amazon-sellers-get-suspended-for-inauthentic/ (last visited Dec. 26, 2019).

[9] https://www.amazonsellerslawyer.com/inauthentic-item-complaints/ (last visited Dec. 26, 2019).

[10] https://www.payability.com/blog/10-reasons-amazon-sellers-are-suspended/ (last visited Dec. 31, 2019)(emphasis added).

your part to research past inauthentic complaints and improve the quality of your inventory, then they know you haven't paid attention.  Now the suspension forces you to.[11]

## V.    THE ROAD TO INNOVATION - CALMEROOS' PUPPY

55.    Defendants' unprofessional business tactics created an opportunity to improve their companion puppy.  For instance, Plaintiff Calmeroos began selling on Amazon in 2015, distributed SmartPetLove's puppy for several years, and contributed to the puppy's online sales presence.  However, Defendants' disregarded Plaintiff's contributions, severed all distribution relationships, and revoked their sales agreement with Plaintiff.  Resultingly, Plaintiff sought to improve a 22-year-old design with customer feedback, new technology, and a fresh passion infused into the novel redesign.  McPherson Decl. ¶ 7, Exhibit 1.

### A. History of Selling on Amazon

56.    As background, Ms. McPherson, owner of Plaintiff Calmeroos, first learned about selling products on Amazon in October of 2015.  The idea intrigued her because it appeared to offer flexibility and great earning potential. After leaving her corporate finance career in 2012 to be a stay-at-home mom, she embraced her ever-growing entrepreneurial spirit, and found the flexibility her

---

[11] https://www.ecommercechris.com/amazon-seller-invoices/ (last visited Dec. 26, 2019).

home enterprise created enticed her even more.  From October 2015 until January 2017, she sold a variety of products on Amazon.com.  McPherson Decl. ¶ 8, Exhibit 1.

### B.  Selling Snuggle Puppies from SmartPetLove

57.      In February of 2017, Ms. McPherson discovered a product called Snuggle Puppy, made by a company called Snuggle Pet Products, LLC DBA SmartPetLove.  Ms. McPherson reached out to the company to begin selling their products as a wholesaler.  Ms. McPherson signed their MAP Agreement on February 2, 2017,[12] and began ordering their products to re-sell on Amazon, with their permission. McPherson Decl. ¶ 9, Exhibit 1.

58.      On January 23rd, 2018, Ms. McPherson received an email from Maggie Fanslow,[13] Plaintiff's contact at SmartPetLove, informing her that Defendant SmartPetLove was no longer allowing any third-party sellers to sell their products on Amazon since they were having a lot of difficulty controlling their pricing.  McPherson Decl. ¶ 10, Exhibit 1.

59.      Ms. McPherson pleaded her case back to Maggie explaining that she

---

[12] Exhibit 2, (Signed SmartPetLove MAP Agreement).

[13] Exhibit 3, (emails).

had always respected their MAP pricing and asked if they would allow me to be their exclusive third-party seller on Amazon. On February 5th, 2018, Ms. McPherson received an email response from Maggie[14] indicating that SmartPetLove had decided to allow her to be their exclusive third-party seller due to Ms. McPherson's excellent track record with the company. McPherson Decl. ¶ 11, Exhibit 1.

60.     Ms. McPherson continued to sell SmartPetLove products until June of 2018.  On June 8, 2018, Ms. McPherson received an email from Chris Beyersdorff,[15] the company CFO, explaining that they were no longer allowing any third-party sellers to sell on Amazon, and that now included her.  Since her entire Amazon business was selling SmartPetLove products, this decision put Plaintiff in a difficult financial situation. McPherson Decl. ¶ 12, Exhibit 1.

### C. From SmartPetLove Distributor to Pet-Calming Calmeroo Innovator

61.     Plaintiff contributed to Defendants' sales and profits by distributing SmartPetLove's products wholesale for several years.  With Defendants' permission, Plaintiff sold the products exclusively on Amazon.com.  Plaintiff's

---

[14] Exhibit 3, (emails).

[15] Exhibit 3, (emails).

professionalism, work ethic, and adamant adherence to Defendant's policies,

such as MAP, ensured that both her company and Defendants remained on good

terms.  Upon information and belief, Defendants never cited any issues with

their loyal distributor.   McPherson Decl. ¶ 13, Exhibit 1.

62.     Without warning, in or around June 2018, Defendant SmartPetLove

canceled its permission and ceased all third-party online sellers' sales, including

those of Plaintiff's.  With such unprofessional tactics, Ms. McPherson sought to

improve the prior puppy design and developed, tested, and implemented her

own product.  As a distributor, she immersed herself in customer service

concerning defendant's product sales.  That is, she reviewed all customer

feedback and found many aspects to improve quality in the product.  Similarly,

as a pet owner and lover, she has first-hand knowledge of the relationship

between her pets and defendant's puppy.  McPherson Decl. ¶ 14, Exhibit 1.

63.     Additionally, since Defendant's puppy had largely remained

unchanged for the past 22 years, innovations in technology and Ms. McPherson's

experience allowed her to improve virtually every aspect of her calming puppy

companion.  Even SmartPetLove's CEO, Rob Emery admits that the Snuggle

Puppy *was innovative 22 years ago*.   *See*

https://www.smartpetlove.com/2019/11/14/snuggle-puppy-celebrates-22-

years/  (last visited Dec. 26, 2019)("For 22 years, the Snuggle Puppy has been a game changer for pets and pet parents,' said Rob Emery, CEO . . . .').

### D. Deciding to Create Calmeroos

64.      Ms. McPherson truly loved the impact that pet-calming devices had on pets, as she discovered due to customer reviews, and feedback. She knew there was room for product improvement and sought to create her own version.

65.      Ms. McPherson incorporated Wanna Play Products Inc. on January 1st, 2019[16], which would become the owner of the brand Calmeroos.  McPherson Decl. ¶ 15, Exhibit 1.  Ms. McPherson also applied for trademark protection to her brand, Calmeroos[17].

66.      In October 2018, Ms. McPherson began contacting suppliers in China to begin the process of producing her own product, Calmeroos.  She reached out to 3 separate factories – one for the plush, heartbeat and heat packs. She sketched her ideas and sent her drawings to the factories.[18] McPherson Decl. ¶ 16, Exhibit 1.

---

[16] Exhibit 4, (AOI - Wanna Play Products Inc.).

[17] Exhibit 6 (Calmeroos Trademark Appl'n).

[18] Exhibit 5, pp. 6-7 (Calmeroos Improvements).

67.     From October 2018, until October 2019, Ms. McPherson was designing and having her products manufactured.  Calmeroos, the comforting puppy, finally arrived in the USA on November 6th, 2019.  Ms. McPherson personally flew from Winnipeg to California to inspect her shipment to ensure a high-quality product.  After meeting her strictest standards, Ms. McPherson shipped them into Amazon FBA, and they became available on November 27th, 2019.  McPherson Decl. ¶ 17, Exhibit 1.

### E.  Product Improvements

68.     Ms. McPherson wanted to make Calmeroos the best pet-calming device on the market.  Her thoughtfully-designed improvements applied to virtually every aspect including –

    a.  improving disposable heat packs were very long-lasting at 36 hours each (50% increase over Defendants' product);

    b.  including 2 heat packs (100% increase over Defendants' product);

    c.  substituting a plush that was realistic in both look and positioning; and

    d.  increasing heart's motor's efficiency to last a full 3 weeks on continuous use with 2-AAA batteries (50% increase over Defendants' product).

*See* McPherson Decl. ¶ 18, Exhibit 1; *see also* Exhibit 11, (Products)(depicting Plaintiff's Calmeroos product to Defendants).

69.     If these improvements weren't enough, Ms. McPherson endeavored to give back to pets in need.  For every Calmeroos sold, she donates the financial equivalent of 2 pounds of pet food to rescue shelters.  She has also donated many Calmeroos to rescue shelters and will continue to do so.  McPherson Decl. ¶ 19, Exhibit 1.

70.     To applaud her efforts, the rescues' feedback has been excellent, and they appreciate how Calmeroos help their puppies overcome loneliness and feel comforted.  McPherson Decl. ¶ 20, Exhibit 1 *see also* Exhibit 3, (emails).

<u>**Press for Calmeroos**</u>

71.     Three different news outlets, including the Winnipeg Free Press (full page of the Life and Style section as well as online), the Winnipeg Sun (full page on page 3 of paper and online), as well as Better Homes and Gardens online showcased the new Calmeroos.  *See, e.g.,*

- https://www.winnipegfreepress.com/arts-and-life/life/a-pet-for-a-pet-564817142.html

- https://winnipegsun.com/news/local-news/local-entrepreneur-develops-pet-calming-product-for-puppies-kittens

- https://www.bhg.com/news/calmeroos/

McPherson Decl. ¶ 21, Exhibit 1.

## VI.   TIMELINE OF DEFENDANTS' PERFIDY

72.   **November 27, 2019** - Plaintiff's Calmeroos first began selling on

Amazon.  McPherson Decl. ¶ 22, Exhibit 1.

73.   **November 27, 2019 – Present** - Ms. McPherson immediately enjoyed

her product launches' success and sales continued to grow day after day

McPherson Decl. ¶ 23, Exhibit 1.

### A. Accusations of Patent Infringement

74.   **November 29th, 2019** - Upon information and belief, Defendant

Robert Emery, the owner of Defendant Snuggle Pet Products, LLC, ordered

Plaintiff's Calmeroos Puppy product to be shipped to his home address in

Florida.[19]

**December 3rd, 2019** - Amazon sent Plaintiff two emails one hour a part

indicating that SmartPetLove filed Amazon Complaints against its

competitor, Calmeroos.[20]

---

[19] Exhibit 7, (Reviews).

[20] Exhibit 3, (emails).

### B. Defendants' False Product Review

75.     **December 11th, 2019 –** Upon information and belief, Defendant Robert Emery or Defendant DOE 1 left a 1* product review on Calmeroos Product listing that said 'Another knock-off of the original Snuggle Puppy. Go with the original you will not be let down.'[21]

### C. Defendants' False Seller Review

76.     **December 14th, 2019 -** Upon information and belief, Defendant Robert Emery or Defendant DOE 1 left a 1* Seller Feedback review which read exactly the same way 'Another knock-off of the original Snuggle Puppy. Go with the original you will not be let down.'[22]

### D. Defendants Accuse Plaintiff's Calmeroos Puppy of Being an Inauthentic Plaintiff's Calmeroos Puppy

77.     **December 20, 2019 –** Plaintiff's most successful listing, the Calmeroos Puppy listing, was shut down due to Defendants' multi-prong attack.[23]

---

[21] Exhibit 7, (Reviews).

[22] Exhibit 7, (Reviews).

[23] Exhibit 3, pp. 21-22 (emails).

## VII.   DEFENDANTS' FAKE PATENTS ASSERTED AGAINST PLAINTIFF

78.     Defendant SmartPetLove's Amazon Complaints are patently false because its asserted patents are not registered, valid, and enforceable US patents.

79.     Those Complaints allege that Plaintiff Calmeroos sold *its Calmeroos Puppy Heartbeat Toy Sleep Aid for Smart Pets Who Love to Snuggle and 2 Long-Lasting Heat Packs Last 36 Hours Each Puppy Anxiety Relief Soother Dogs Cuddle Calming Behavioral Aid for Pets*[24] ('Accused Product'), and such sales infringe SmartPetLove's registered patents.  Those patent numbers vary from its first Complaint ('Patent number: Certificate No. 544552') to its second Complaint ('Patent number: 5445522')(collectively, 'Asserted Patents').

### A. Defendant SmartPetLove Falsely Claims Patent Infringement.

80.     On December 3, 2019, Plaintiff Calmeroos received a performance notification from Amazon.com's Seller Performance Team.  Upon information and belief, Defendants filed Amazon Complaints concerning –

> Info SPL
> info@smartpetlove.com
> Patent number: Certificate No. 544552

---

[24]

https://www.amazon.com/gp/product/B07NDQLB2Z?pf_rd_p=ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=J511E1GCG7QVMTM5HKXN (last visited Dec. 13, 2019).

ASIN: B07NDQLB2Z
Title: Calmeroos Puppy Heartbeat Toy for Smart Pets Who Love to
Snuggle and 2 Heat Packs Puppy Anxiety Relief
Calming Behavioral Aid for Pets
Complaint ID: 6639404641

25

81.    Within an hour, Defendants also filed a Complaint concerning -

Jason Bakke
info@smartpetlove.com
Patent number: 5445522

ASIN: B07NDQLB2Z
Title: Calmeroos Puppy Heartbeat Toy for Smart Pets Who Love to
Snuggle and 2 Heat Packs Puppy Anxiety Relief
Calming Behavioral Aid for Pets
Complaint ID: 6639550561

26

## B. Defendant SmartPetLove's First Asserted Patent Expired Over 100 Years Ago.

82.    Defendant SmartPetLove's first Asserted Patent ('Patent number:

Certificate No. 544552') *was indeed* registered . . . in 1895, **over a full century ago**[27]

---

[25] Exhibit 8, p. 14 (Letter to Defendants) - Amazon Policy Violation
Performance Notification, (Amazon Notice)(Complaint ID:  6639404641)).

[26] Exhibit 8, p. 15 (Letter to Defendants) - Amazon Policy Violation
Performance Notification, (Amazon Notice 2)(Complaint ID:  6639550561).

[27] http://patft.uspto.gov/netacgi/nph-
Parser?Sect1=PTO1&Sect2=HITOFF&d=PALL&p=1&u=%2Fnetahtml%2FPTO%

and unsurprisingly was not owned by any Defendant.[28]

### C. Defendant SmartPetLove's Second Asserted Patent <u>Relates to Combustion Engine, Not Puppies.</u>

83.     Inspecting SmartPetLove's second Asserted Patent[29], a cursory review of 'Patent number: 5445522' within the USPTO's Patent Full-Text and Image Database (PatFT) returned an expired patent, titled 'Combustion device,' which registered in 1995.[30]  Again, none of the Defendants owned this patent either.

84.     In sum, Defendant SmartPetLove asserted a patent that was registered in 1895 and one directed to a '*Combustion device*' against Calmeroos' *puppy sleep aid*.  Neither patent is enforceable.  Neither patent is owned by any Defendant.

---

2Fsrchnum.htm&r=1&f=G&l=50&s1=0544552.PN.&OS=PN/0544552&RS=PN/0544552 (last visited Dec. 13, 2019).

[28] Exhibit 8, p. 14 (Letter to Defendants) - Amazon Policy Violation Performance Notification, (Amazon Notice)(Complaint ID:  6639404641)).

[29] Exhibit 8, p. 15 (Letter to Defendants) - Amazon Policy Violation Performance Notification, (Amazon Notice 2)(Complaint ID:  6639550561).

[30] http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO1&Sect2=HITOFF&d=PALL&p=1&u=%2Fnetahtml%2FPTO%2Fsrchnum.htm&r=1&f=G&l=50&s1=5445522.PN.&OS=PN/5445522&RS=PN/5445522 (last visited Dec. 13, 2019).

## VIII.    DEFENDANTS' FALSE DECLARATIONS

85.    Defendants' patent infringement claims are baseless and violate the declarations Defendants made to Amazon.com, Inc. when Defendants filed their reports –

> I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law.
>
> I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above.[31]

86.    Nevertheless, as a result of Defendants' fraudulent Amazon Complaints, Amazon suspended Plaintiff's puppy offerings so that they were/are no longer available to Amazon customers.

87.    Defendants' fraudulent and bad-faith complaints, and their resulting suspension, have materially affected potential purchasers because they no longer have the option to purchase authentic Calmeroos Puppies.

88.    Additionally, as a result of Defendants' fraudulent and bad-faith complaint, Plaintiff has suffered extensive loss of sales, loss of goodwill, and frozen assets.

---

[31] *See* Amazon's Report Infringement Form *available at* https://www.amazon.com/report/infringement (last visited Dec. 13, 2019).

## IX.   NEGATIVE PRODUCT REVIEW AND INAUTHENTIC COMPLAINT BY AN ANONYMOUS INDIVIDUAL OR ENTITY

89.     Plaintiff has made several non-judicial attempts to ascertain the real individuals behind Defendant DOE 1.  None of its efforts have been successful. For this reason, Plaintiff must, again, turn to judicial options.

90.     Upon information and belief, Defendant DOE 1 does not use its real name on Amazon.

91.     Upon information and belief, Defendant DOE 1 is working in concert to eliminate competition to Defendant SmartPetLove.  Defendant Doe 1 has voluntarily and intentionally devised and participated in a scheme to defraud Plaintiff out of money.

92.     Defendant DOE 1's actions prevent Plaintiff from selling its inventory to actual customers, from purchasing additional inventory, and from having an untarnished Amazon seller rating.

93.     Upon information and belief, Defendant DOE 1 intended to defraud Plaintiff out of money through its pattern of purchasing, returning, and leaving negative reviews.  Upon further information and belief, Defendant DOE 1 has defrauded Plaintiff out of money by submitting bogus inauthenticity claims with Amazon.

94.     Upon information and belief, Defendant DOE 1 has used e-mail

addresses, the Internet, interstate mail, and other communications to further its

conspiracy.

## X. SUSPECTED DEFENDANT EMERY'S BOGUS REVIEWS AND ONLINE STALKING

95.     Defendants have sold the same product for decades.  ''For 22 years, the Snuggle Puppy has been a game changer for pets and pet parents,' said Rob Emery, CEO.'[32]

96.     The current CEO of Defendant SmartPetLove, Defendant Rob Emery, just started following Plaintiff Calmeroos on Instagram.  McPherson Decl. ¶ 24, Exhibit 1.

### A. Calmeroos' Perfect Feedback Except Defendants' One Star Review

97.     Many happy clients have shared highlights of Ms. McPherson's contributions to Calmeroos' benefits over Snuggle Puppy's 22-year-old design.

98.     As one instance, one commented about Calmeroos' high product quality.[33]

99.     As another, Calmeroos' life-like attributes have emotionally assisted

---

[32] https://www.smartpetlove.com/2019/11/14/snuggle-puppy-celebrates-22-years/ (last visited Dec. 31, 2019).

[33] Exhibit 7, (Reviews)(Dec 19, 2019 - Rescue Feedback on high quality, donation' highlights feedback about the high product quality.).

those in need.[34]  In fact, one review was written by a foster pet parent who received a donated Calmeroos, and in the comments, another foster donation recipient mentioned how effective Calmeroos are, and a couple of people then commented asking where they could find one.

100.     Yet, another customer shared a photo of their dog snuggled up to Calmeroos. This thread shows the product works and when people hear about it, they want one too.

101.     Similarly, a client raved that her Calmeroos has greatly assisted for her foster puppy in adjusting to a new environment.[35]

### B.  Defendants' Damaging Effect

102.     In particular, Defendant DOE 1 has defamed Plaintiff by falsely and publicly stating that Plaintiff's Accused Puppy Toy is of poor quality.  Defendant DOE 1's assertions, considered in context, necessarily imply a false message and are literally false in that they state or imply that Plaintiff's Accused Puppy Toys are of poor quality.  As such, Defendant DOE 1's statements deceived, or had the capacity to deceive Amazon.com and purchasers on the Amazon.com platform.

---

[34] Exhibit 7, (Reviews)(Dec 17, 2019 - Rescue review plus comments with customer interest and more reviews.).

[35] Exhibit 7, (Reviews)(Dec 12, 2019 - Customer Review for Foster Puppy).

103.    Defendant DOE 1's false and defamatory statements are designed to interfere with and injure Plaintiff in connection with its business and to promote Defendant DOE 1's own business agenda.  This wrongful and tortious conduct perpetrated by Defendant DOE 1 has disparaged Plaintiff and is causing and will continue to cause Plaintiff irreparable harm and damages.

104.    Defendant DOE 1's false and defamatory statements have also caused tortious interference with Plaintiff's contractual obligations with Amazon.com Inc. and its customers.

105.    The false and/or misleading statements of Defendant DOE 1 misrepresent the characteristics of Plaintiff' s Accused Products suggesting that they are of poor quality.

106.    Due to Defendant DOE 1's fraudulent actions, Plaintiff is entitled to injunctive relief prohibiting Defendant DOE 1 from tortiously interfering with Plaintiff's contractual and business relations, as well as an award of monetary damages, punitive damages, attorney's fees, and costs to be proven at trial.

107.    In addition to Defendants' lack of patent knowledge, they also fail to understand significance of using a legal term such as 'knock off' when Defendants made the following Amazon customer review on December 11, 2019 (the 'Dec. 11 Review') against Calmeroos –



Accused Product.[36]

108.     As an aside, "3 people found this helpful," which translates in to lost

sales.

109.     However, knock-offs usually relate to trademark infringement as

opposed to patent infringement Complaints.  And, 'knock-offs' carry special

meaning, especially when used in the legal sense.  For instance, the Second

Circuit in *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, found that knock-offs are

a 'cheap [] copy of the original manufacturer's more expensive product, thus

allowing a buyer to acquire the prestige of owning what appears to be the more

expensive product.'  219 F.3d 104, 108 (2d Cir. 2000).

---

[36]

https://www.amazon.com/gp/product/B07NDQLB2Z?pf_rd_p=ab873d20-a0ca-439b-ac45-cd78f07a84d8&pf_rd_r=J511E1GCG7QVMTM5HKXN (last visited Dec. 13, 2019).

110.    Here, nothing suggests that the Accused Product is a knock-off.  For example, the Accused Product's cost is similar to the *original Snuggle Puppy* (see right).[37]



111.    Moreover, once one actually inspects the meticulous packaging, build quality, and overall experience of the two dogs, any objective consumer would not deem Plaintiff's Accused Product inferior or a knock-off of Defendants *original Snuggle Puppy.*  In fact, the Calmeroo is actually more luxurious than Defendants'.



---

[37] https://www.amazon.com/s?k=snuggle+puppy&ref=nb_sb_noss_1 (last visited Dec. 13, 2019).

112.    Indeed, the presentations vastly different, and the actual quality of the products differ.  Not only does the *original Snuggle Puppy* lack accessories, even the one included, the Heat Pack seems expired, stale, or otherwise unusable.



113.    Defendants' 'review' was nothing short of another tactic to disrupt Plaintiff Calmeroos' business.

## XI.    DEFENDANT DOE 1'S INAUTHENTIC CLAIM

114.    Using 'knock-off' is a trigger word to alert Amazon and have it intervene.

115.    On December 20, 2019, in addition to the publicly viewable 1* seller

feedback rating, and the threat of deactivation due to the Order Defect Rate, Calmeroo's most successful listing, the Calmeroos Puppy listing, was shut down on due to claims on inauthenticity.[38]

116.    Through research, Ms. McPherson has reason to believe that Amazon's algorithm identifies listings and shuts them down if any product reviews or seller feedback reviews mention the words 'knock-off.'  Ms. McPherson has been forced to submit an appeal to the Amazon Seller Performance Team requiring her to explain her Plan of Action, and to reveal all of her suppliers' information in order to even be considered for reinstatement. So far, Ms. McPherson is losing sales every hour. McPherson Decl. ¶ 25, Exhibit 1.

117.    Regarding Calmeroo's listing reinstatement efforts, the Seller Performance Team responded to its first email saying that its invoices didn't allow them to confirm the supplier, which must have been a copy/paste response because Ms. McPherson provided every detail about her suppliers, and so do the invoices Ms. McPherson provided. McPherson Decl. ¶ 26, Exhibit 1.

118.    Regardless of settlement, Defendants' damage that has been done to

---

[38] Exhibit 3, (emails).

Plaintiff Calmeroos' Amazon seller account will be irreversible.

## XII.    THIS FIRM'S GOOD FAITH EFFORTS TO RESOLVE

119.    After Defendants' wrongdoings, Calmeroos began losing significant revenue.  When coupled with Defendants' complete lack of professionalism, Ms. Crystal McPherson hoped for an amicable resolution.  McPherson Decl. ¶ 27, Exhibit 1.

120.    Calmeroos again incrementally sought resolution.  Calmeroos even hired a patent litigation firm to communicate past efforts, willingness to settle, and the dire state of Calmeroos' business.  McPherson Decl. ¶ 28, Exhibit 1.

121.    This firm began such efforts by writing to Defendants in December 2019.  *See* McPherson Decl. ¶ 29, Exhibit 1; *see also* letter from Mr. Jeff Breloski, attorney to Calmeroos, to Defendants (Dec. 16, 2019), Exhibit 8, (Letter to Defendants).

122.    In total, after lost business, resources used to hire consultants and attorneys, and precious time wasted, Defendants still have not identified their Asserted Patents, explained their infringement contentions, or provided Calmeroos with any settlement demands.  McPherson Decl. ¶ 30, Exhibit 1.

## XIII.    EXTRAORDINARY CIRCUMSTANCES

123.    Defendants' bogus complaints, refusal to timely withdraw in the

face of fraud, and holiday sales timing have accomplished their intended effects – unfairly destroy their competition.

### A. Defendants and Counsel Ignore Longstanding Law.

124.    SmartPetLove does not own the Asserted Patents.

125.    SmartPetLove's bad-faith assertion that Plaintiff's Calmeroos Puppy 'will infringe [SmartPetLove's] design and utility patents' is an anti-competitive scare-tactic intended to stop Plaintiff from fairly competing with SmartPetLove.

126.    SmartPetLove and its attorney knew or should have known that their accusations were false and groundless.

127.    Defendants' statement transmitted to Amazon, combined with the Defendant DOE 1's false reviews, has led consumers to believe that they can be sued for purchasing products from Plaintiff and that Plaintiff's products are counterfeit and unlawful.

128.    The Defendants published their false and defamatory statements for a commercial purpose:  to help Defendants monopolize the market for a certain category of puppies on Amazon and to prevent Plaintiff from fairly competing.

129.    The false and/or misleading statements of the Defendants were also made in the context of 'commercial advertising or promotion,' as used in Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

130.    Defendants' false and defamatory statements have resulted

substantial and irreparable damage to Plaintiff's business, reputation, and

goodwill.

### B. Calmeroos Suffers Immeasurable Lost Sales.

131.    Plaintiff's Calmeroos Puppy, ASIN B07NDQLB2Z, is still removed

in the US market.

132.    Notably, and upon information and belief, Defendants' calculated

wrongs commenced with the 2019 holiday shopping season.

133.    Upon receiving notice, Calmeroos immediately began its resolution

attempts to salvage sales during the holiday shopping season.

134.    With the busy holiday shopping season beginning, Calmeroos

respectfully requested a response in time to sell during this record-setting

holiday rush.  *See* Black Friday, Thanksgiving Day Both Set Records in U.S.

Ecommerce Sales by Mike O'Brien (Nov. 30, 2019)[39]

> Thanksgiving Day ecommerce sales were also a record $4.2 billion,
> an increase of 14.5%, marking the first time it surpassed the $4
> billion mark. Large ecommerce companies of $1 billion and over saw
> a 244% gain in Thanksgiving Day ecommerce sales, while smaller
> retailers – those with $50 million or less in annual sales – saw a 61%

---

39 https://multichannelmerchant.com/ecommerce/black-friday-
thanksgiving-day-set-records-u-s-ecommerce-sales/ (last visited Dec. 22, 2019).

increase.

*Id.*

135.     Calmeroos' suspensions spanned over the busy holiday shopping season due to Defendants' lack of good faith.

## C. Defendants' Exploits Result in a Temporary Restraining Order and Preliminary Injunction.

136.     To date, Defendants refuse to withdraw any complaints.  Such a stubborn stance is particularly egregious as all negative actions are bogus and unsupported.

137.     Upon information and belief, Defendants have attempted to eliminate their competition by utilizing the online Amazon infringement report and force them to stop competing without any non-judicial recourse.

138.     Each day that passes results in increased damages.  McPherson Decl. ¶ 31, Exhibit 1.

139.     Defendants have failed to respond in any meaningful manner. Exhibit 10, (2019.12.20 - CALMEROOS LETTER).

140.     By failing to cooperate and resolve the complaints, and despite repeated requests, Defendants and their counsel have effectively and unfairly received a preliminary injunction leaving Calmeroos without recourse.  That is, Calmeroos is temporarily restricted from selling its Accused Products on

Amazon.  Further, Defendants are unfairly preventing Calmeroos from curing any potential infringement.

141.     To put the severity of their action into perspective, a comparison of this complaint to a district court action is necessary.  Before a court, a preliminary injunction is a drastic and extraordinary remedy that is infrequently granted in patent infringement actions.  *See U.S. Pharm. Corp. v. Trigen Labs., Inc.*, No. 1:10–cv–0544–WSD, 2011 U.S. Dist. LEXIS 13637, at *18 (N.D. Ga. Jan. 27, 2011).  A party seeking temporary or preliminary injunctive relief must establish that:  (1) there is a substantial likelihood that the movant will prevail on the merits; (2) the movant will suffer irreparable injury if the relief is not granted; (3) the threatened injury outweighs the harm the relief would inflict on the opposing party; and (4) if granted, the injunction would not be adverse to the public interest.  *See Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 977 (Fed. Cir. 1996)(emphasis added); *Skillern v. Ga. Dep't of Corr.*, Civ. Act. No. 1:05-cv-2629, 2006 U.S. Dist. LEXIS 81878, at *15 (N.D. Ga. Nov. 7, 2006).

142.     Moreover, a permanent injunction is only permissible after a final judgment, which occurs at the end of a litigation case.  Once a guarantee after winning a patent case, the Supreme Court recently ruled that permanent injunctions are no longer automatic.  Rather, a successful plaintiff must prove

that (1) it will suffer an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) the balance of hardships between the parties favors the plaintiff; and (4) the public interest would not be disserved. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 391 (2006).

143.     Both types of injunctive relief usually require overcoming high burdens of proof, providing adequate evidentiary support, and offering supporting expert testimony.

144.     Contrastingly, here, Defendants have presumably filled out a single infringement form . . . **with false information**.

https://www.amazon.com/gp/help/reports/ infringement (last visited Dec. 22, 2019).  With no further evidence and no opportunity to respond, they have effectively received injunctive relief without proving the need for such relief.

### D. Defendants' Ongoing Crimes Endanger Plaintiff's Livelihood.

145.     Defendants have not retracted their negative Seller Feedback review, which has had grave consequences on Calmeroos' seller account. First, its Order Defect Rate was severely affected, with a threat from Amazon that its account could be deactivated[40] because the only negative feedback Plaintiff received

---

[40] Exhibit 9 – (2019.12.20 - Order Defect Rate - Threat of Deactivation).

(which was from Defendants) made the average Order Defects very high for the first few weeks, since it is calculated based on the negative feedback received compared to total overall orders received.  McPherson Decl. ¶ 32, Exhibit 1.

146.    Amazon's target for their Order Defect Rate is under 1%, but Plaintiff's quickly became 11.1% since the date range used to calculate the Order Defect Rate was from October 2, 2019 to November 30th, 2019. McPherson Decl. ¶ 33, Exhibit 1.

147.    Plaintiff Calmeroos is still currently above the target of under 1%, so the threat of deactivation is still looming on Calmeroos' account.  McPherson Decl. ¶ 34, Exhibit 1.

## XIV.   CLAIMS

### A. COUNT I:  Declaratory Judgment of Invalidity

148.     Calmeroos re-alleges the foregoing relevant paragraphs of this Complaint as if set forth in full herein.

149.     An actual and justiciable controversy exists between Calmeroos and Defendants as to the validity of their unidentified patents.

150.     The claims of those patents are invalid for failure to meet one or more of the requirements of patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, §§ 101, 102, 103 and 112.

151.     Additionally, the Accused Product is a straightforward puppy with a heat pack and heart device.  Therefore, if the Accused Product infringes any unidentified patent, the unidentified patent lacks novelty under 35 U.S.C. § 102 and is rendered obvious by multiple prior art references pursuant to  35 U.S.C. § 103.

152.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Calmeroos is entitled to and hereby move the Court for a judgment declaring that such claims are invalid for failure to comply with one or more requirements for patentability under the patent laws of the United States, including, but not limited to, 35 U.S.C. § 101, 102, 103, 112, 113, 115 and/or 116.  Further, such

claims are invalid for want of novelty and obviousness.

### B.  COUNT II:  Declaratory Judgment of Non-Infringement

153.    Calmeroos re-alleges the foregoing relevant paragraphs of this Complaint as if set forth in full herein.

154.    An actual and justiciable controversy exists between Calmeroos and Defendants as to the infringement of their unidentified patents.

155.    Calmeroos' manufacture, sale, and offers to sell its Accused Product in the United States have not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of their unidentified patents.

156.    Defendants have no ownership rights to wield the Asserted Patents against Calmeroos.

157.    The allegations of patent infringement by Defendants have placed a cloud over Calmeroos' business and are likely to cause Calmeroos to lose revenues and business opportunities.  Defendants' actions and assertions, therefore, will likely cause irreparable injury to Calmeroos.

158.    Calmeroos is entitled to a judgment declaring that Defendants' unidentified patent is not infringed by Calmeroos' Accused Product.

### C.  COUNT III: Unfair Competition

159.     Calmeroos re-alleges the foregoing relevant paragraphs of this Complaint as if set forth in full herein.

160.     Defendants filed complaints with Amazon.com, Inc. against Calmeroos alleging patent infringement of unenforceable patents.

161.     Defendants failed to provide any information concerning the complaints and ignored all resolution efforts.

162.     By filing incomplete, bogus complaints, Defendants have unfairly disadvantaged Calmeroos.

### D. COUNT IV:  Tortious Interference with Business Relationships

163.     Calmeroos re-alleges the foregoing relevant paragraphs of this Complaint as if set forth in full herein.

164.     Calmeroos has a valid contract with Amazon.com, Inc.

165.     Defendants sell on Amazon.com and knew or should have known of Calmeroos' contract with Amazon.com, Inc.

166.     Defendants filed their First Patent Infringement Complaint by asserting an expired patent registration that none of them owned.

167.     Defendants filed their Second Patent Infringement Complaint by asserting a patent related to combustion engines that none of them owned.

168.     Defendants have acted with a direct or 'specific' intent to injure Plaintiff.

169.     Defendants have filed inauthentic claims that are untrue.

170.     Defendants' improper conduct in submitting false infringement reports and false and disparaging reviews with whom Plaintiff has ongoing contracts and business relations.

171.     Defendants intentionally interfered with Calmeroos' business expectancy with Amazon.com, Inc. and its customers.  In an effort to interfere with the Calmeroos' economic relations, Defendants contacted Amazon.com to allege that Calmeroos were infringing an unidentified patent.

172.     Upon information and belief, Defendants knew and intended that by making such an allegation, Amazon.com would immediately remove the Calmeroos' listings from its website and prohibit it from selling the Accused Products until the allegation of infringement was resolved.

173.     Defendants intentional interferences with Calmeroos' contract was unjustified. Defendants used improper means, acted in bad faith in intentionally interfering with Calmeroos' contract with Amazon.com, Inc.  Defendants' allegations of patent infringement by Calmeroos to Amazon.com were knowingly false, was an improper means, and was done with the intent to

interfere with the Calmeroos' current and prospective economic relations, especially during a high-volume selling season.

174.     Defendants have acted in objective and subjective bad faith by having wrongful complaints filed and refusing to resolve or withdraw them.

175.     Despite its knowledge, Defendants' failure to act in good faith have caused damages to Calmeroos' business relationships with Amazon.com and their customers.  As a direct and proximate result, Calmeroos has been damaged by Defendants' tortious interferences with Calmeroos' contract with Amazon.com, Inc. in an amount to be proven at trial.

### E.  COUNT V:  Tortious Interference with a Business Expectancy

176.     Calmeroos re-alleges the foregoing relevant paragraphs of this Complaint as if set forth in full herein.

177.      Plaintiff had a reasonable expectation of entering into valid business relationships with Amazon.com buyers and the Defendants knew of this reasonable expectancy.

178.     Defendants have created an unsupported negative review of Calmeroos' products on Amazon.com

179.     Defendants have caused an Inauthentic Complaint by using a trigger word, 'knock off,' in their review.

180.     Defendants have filed false intellectual property claims against Plaintiff with Amazon.com.

181.     Through these willfully false statements and representations, Defendants intentionally interfered with Plaintiff's business expectancy by convincing reasonably likely customers of Plaintiff not to buy its products.

182.     With reasonably certainty, but for Defendants' false statements and representations, Plaintiff's business expectancy would have been realized.

183.     Defendants' interference was done purposefully, intentionally, and willfully.

184.     As a direct and proximate result of Defendants' intentional conduct, Plaintiff lost numerous sales.

### F.  COUNT VI:  Unjust Enrichment

185.     Calmeroos re-alleges the foregoing relevant paragraphs of this Complaint as if set forth in full herein.

186.     Defendants' wrongful acts have eliminated Plaintiff's Calmeroos Puppy from the Amazon.com marketplace.

187.     Defendants have monetarily benefited from its unlawful acts by an increase in puppy sales and by the elimination of a competitor.

188.     But for Defendants' wrongful acts, Plaintiff would not have lost

sales, goodwill, and the ability to sell its puppies and Defendants would have not

have wrongly reduced competition and increased sales.

189.    Plaintiff has no adequate remedy at law.

### G. COUNT VII Defamation *Per Se* as to Defendant Robert Emery or Defendant DOE 1

190.    Calmeroos re-alleges the foregoing relevant paragraphs of this

Complaint as if set forth in full herein.

191.    Defendants' intellectual property infringement report to Amazon (a

third party) falsely stated, directly or by clear implication that Plaintiff infringed

on Defendants' non-existent patent rights.

192.    Defendants have also filed an inauthentic claim.

193.    Defendants' communication was not privileged.

194.    Defendants' falsehoods were made with actual malice by

Defendants inasmuch as it knew of the falsity or recklessly disregarded their

truth or falsity.

195.    Defendants was at least negligent in making the defamatory and

injurious statements that Plaintiff's Calmeroos Puppy infringe Defendants'

intellectual property.

196.    Defendants' statements have caused special harm to Plaintiff or are

actionable irrespective of special harm as they were made with the intent to

cause Plaintiff's customers and Amazon.com to cease doing business with Plaintiff and/or purchasing Plaintiff's Products.

197.     By its defamatory and injurious statements and wrongful assertion of rights against Plaintiff's Products, Defendants have disparaged and impugned Plaintiff

198.     Defendants' defamatory and injurious statements were calculated to create an unfavorable impression of and to defame Plaintiff in order to interfere with and destroy Plaintiff's business and did interfere with and destroy Plaintiff's business.

199.     By the aforesaid conduct, Defendants made false and defamatory charges against Plaintiff in reference to its trade, office, and profession that falsely imputed to Plaintiff that Plaintiff's Calmeroos Puppy infringe unenforceable patent registrations that none of the Defendants have a right to assert.  These false charges were calculated by Defendants to injure Plaintiff in its trade, office, and profession and constitute defamation *per se*.

200.     Defendants' willful, deliberate, and defamatory acts were committed with prior knowledge or reckless disregard of the falsity of the statements.

201.     Unless preliminarily and permanently enjoined, Defendants' conduct will cause Plaintiff irreparable harm for which there exists no adequate

remedy at law.

202.    As a direct and proximate result of the aforesaid unlawful conduct of Calmeroos, Plaintiff has suffered substantial damages to its professional reputation, the threat of lost business and lost profits, for which Plaintiff is entitled to recover from Defendants in an amount to be proved at trial, plus punitive damages, and litigation expenses, including attorney's fees.

### H. COUNT VIII:  Georgia Deceptive Trade Practices Act

203.    Calmeroos re-alleges the foregoing relevant paragraphs of this Complaint as if set forth in full herein.

204.    Disparages the goods, services, or business of another by false or misleading representation of fact;

205.    Defendants, directing and/or working in concert with 'Real Puppy Lover,' have falsely represented in writing to third parties that Plaintiff's Calmeroos Puppy are infringing, unlawful, and 'knock-offs.'

206.    Defendants have also deceptively held itself out to Georgia consumers and competitors as owning exclusive rights to the Asserted Patents

207.    Plaintiff has suffered damages as a result of Defendants' actions and will continue to suffer damage unless the Court enjoins Defendants from engaging in these deceptive trade practices.

51

## DEMAND FOR JURY TRIAL

Calmeroos demands a trial by jury under Federal Rule of Civil Procedure 39 for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Calmeroos prays that this Court

- enter judgment in favor of Calmeroos and against Defendants for all counts;

- enter a declaratory judgment that Defendants' patents are invalid and unenforceable;

- enter a declaratory judgment that Calmeroos has not infringed in any way any unidentified patent;

- find and enter and order that Defendants' conduct amounts to an exceptional case and award Calmeroos its costs and attorney's fees;

- enjoin Defendants, their agents, servants, employees and attorneys, and all those in active participation or privity with any of them, from charging Calmeroos or its agents, distributors, or customers with infringement of an unidentified patent, and from otherwise using the unidentified patent to interfere in any way with Calmeroos' manufacture, use, offer for sale, or sale of the Accused Product;

- award Calmeroos damages for injuries they incurred from Defendants' unfair competition;

- award Calmeroos actual, consequential, and punitive damages caused by Defendants' intentional and tortious interference with the Calmeroos' contract and/or business expectancy with Amazon.com, Inc.;

- award costs and expenses to Calmeroos;

- award Calmeroos pre- and post-judgment interest and costs on all damages; and

- award Calmeroos such other and further relief as the Court deems just and proper, premises considered.

-----------------*Signature Page Follows*-----------------

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a

trial by jury on all issues so triable.


By:   /s/ Jeffrey T. Breloski
Jeffrey T. Breloski
Georgia Bar No. 858291
Florida Bar No. 18077
DC Bar No. 974356
USPTO Reg. No. 60,952
E-mail: jbreloski@ATLawip.com

ATLawip LLC
1265 Stuart Ridge
Johns Creek, Georgia 30022
678.667.3491

James Claus
Pro Hac Vice to Be Applied
Florida Bar No. 49847
USPTO Reg. No.62,173
Email: james.claus@onebox.com

James Claus, Attorney
4516 NW 37th Terrace
Gainesville, FL 32605
352.575.8338

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1D, the undersigned counsel certify that the foregoing has been prepared in Book Antiqua 13 point, one of the four fonts and points approved by the Court in LR 5.1C.

By: /Jeffrey T. Breloski
Jeffrey T. Breloski
Georgia Bar No. 858291
Florida Bar No. 18077
DC Bar No. 974356
USPTO Reg. No. 60,952
E-mail: jbreloski@ATLawip.com